UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-295-KKC

KEITH TODD,                                                                                                PLAINTIFF

v.                                              **OPINION AND ORDER**

LEXINGTON FAYETTE URBAN
COUNTY GOVERNMENT,                                                                         DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on cross Motions for Summary Judgment filed by Plaintiff Keith Todd ("Todd") and the Lexington Fayette Urban County Government ("LFUCG"). (Rec. 16, 19)  For the reasons set forth below, the Court will GRANT Defendant LFUCG's Motion for Summary Judgment and DENY Plaintiff Todd's Motion for Partial Summary Judgment.

**I.      FACTUAL BACKGROUND**

Todd is an employee of the LFUCG and works as a police officer for its Division of Police ("the police department"). (Rec. 33, Attach. 1, Deposition of Keith Todd, p. 3).  On March 1, 2006, while Todd was off-duty and at home, he consumed alcohol and an unknown quantity of Ambien sleeping pills and blacked out. (*Id.* at 5).  Sometime thereafter, Todd's wife came home, discovered his condition and called 911. (*Id.* at 5-6).  The LFUCG police department responded and an ambulance transported Todd to the University of Kentucky Hospital where he stayed for five days. (*Id.*).  As a result of the combined effects of the alcohol and sleeping pills, Todd has no recollection of the events leading up to his hospitalization. (*Id.*).

While hospitalized, Todd met with Police Chaplain Welch to discuss, among other things, his need for time off to receive alcohol treatment. (*Id.*)  After his discharge from the

hospital, Todd met with his supervisors and requested time off to attend a private alcohol treatment program. (*Id.* at 7). This request was granted and Todd enrolled a treatment program at the Ridge Behavioral Systems facility in Lexington, Kentucky. (*Id.* at 9). He successfully completed the sixteen day treatment program on March 30, 2006 and was "released to return to work with no restrictions." (Rec. 18, Attach. 2). During the interim, Todd was removed from his duties as a patrol officer and was reassigned to the Bureau of Administrative Services. (Rec. 33, Attach. 1, Deposition of Keith Todd, p. 10).

As a result of the hospitalization, LFUCG required Todd to undergo a "fit for duty" evaluation which was conducted by Dr. Robert Elliott, a psychiatrist. (*Id.* at 11-12). Upon completing the evaluation, Dr. Elliott determined that Todd was fit to return to full time duty without restrictions subject to the following conditions: (1) that Todd attend three Alcoholics Anonymous meetings ("AA meetings") per week and provide evidence of his attendance every month by having a sponsor sign a monthly report; (2) that Todd should submit to random urine tests for drugs and alcohol twice per month for the first three months upon returning to full time duty and monthly tests thereafter if he was doing well; (3) that Todd should abstain from consuming any alcohol including over the counter medications containing alcohol; (4) that Todd was to continue being monitored by a board certified psychiatrist; and (5) that Todd should consult with his physician and psychiatrist about getting off the prescription drugs that he was taking. (Rec. 18, Attach. 1, p. 6-7).

After the "fit for duty" evaluation was complete, Todd met with his supervisors and representatives from LFUCG's Human Resources Office to discuss Dr. Elliott's findings and his future with the police department. (Rec. 33, Attach. 1, Deposition of Keith Todd, p. 20-21).

During the meeting, Michael Allen, the Director of Human Resources discussed each of Dr. Elliott's recommendations with Todd and asked whether he agreed to abide by them. (Rec. 18, Attach. 5, Letter from Kevin Sutton). Todd agreed to follow Dr. Elliott's recommendations and understood that "his continued employment as an officer with the...[LFUCG] Division of Police...[was] contingent upon the adherence to these recommendations for the duration of his career with this government." (Rec. 18, Attach. 4, LFUCG letter). Todd then returned to his full time duties with the police department.[1] (*Id.*). However, it was understood that "any violation of these [Dr. Elliott's] recommendations would result in his termination through the Alcohol and Drug Policy."[2] (Rec. 17, Deposition of Ronnie Bastin, Ex. 1, p. 14); (Rec. 33, Attach. 1, Deposition of Keith Todd, p. 22-23).

Although the record is not entirely clear, it appears that Todd was required to comply with the majority of Dr. Elliott's recommendations outside of his normal forty hour work week and at his own expense. Police Chief Bastin testified that Todd was not permitted to attend the required AA meetings during his regular working hours. (Rec. 17, Deposition of Ronnie Bastin, p. 6). However, he testified that Todd probably would have been permitted to attend the required psychiatric appointments during regular working hours. (*Id.* at 7). Todd also appears to have borne the costs associated with his psychiatric evaluations. (Rec. 33, Attach. 1, Deposition of Keith Todd, p. 33-34).

---

[1] Apparently the agreed conditions differed slightly from Dr. Elliott's recommendations. For the remainder of his career, Todd is required to attend three AA meetings per week with signed documentation from a sponsor. In addition, he was made subject to two random urine tests for the first three months and then one test per month thereafter. He was also required to have follow ups with a psychiatrist every four months with the documentation forwarded to the police department.

[2] This same document indicates that the recommendations would remain in place for the remainder of Todd's career with the police department.

The record indicates that Todd has completely complied with Dr. Elliott's recommendations and has remained sober since his hospitalization. (*Id.* at 23, 40). However, for reasons unrelated to this action, Todd requested that he no longer be required to comply with certain of the recommendations and his request was granted.[3] (*Id.* at 25-31). Todd now seeks compensation for the time that he spent attending and traveling to and from AA meetings and psychiatric examinations. He argues that because the LFUCG required him to comply with Dr. Elliott's recommendations, his compliance must be considered "work" under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and Kentucky law and that he is entitled to compensation for it. LFUCG argues that these activities are not "work" under the FLSA because they merely satisfied a precondition of Todd's employment, namely that he maintain his fitness for duty.

## II.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[3] Todd had a meeting with Michael Allen in January of 2008 to discuss changing some of the existing restrictions. *Id.* at 24-25. This meeting was the result of an incident that occurred while Todd was off-duty and on his way to work. *Id.* at 25. A call was put out that an individual was in a home threatening suicide and threatening officers with a gun. *Id.* When the individual's name was put out, Todd became aware that he knew him from his Alcoholics Anonymous group. *Id.* Todd then went to the home and after talking to the individual on the phone managed to get him to put away his gun and surrender to the police. *Id.* at 25-26. After the incident, Todd informed Chief Sutton that he believed it was necessary for his own safety and the safety of his family, that he step away from the AA meetings for a while. *Id.* This was because he and the suicidal individual were regular attendees. Todd did not request that the required number of meetings be reduced, but only requested that he be permitted to step away from the meetings until it was safe to return. *Id.* at 26. As a result of this incident, Todd began inquiring what the police department was doing with the documentation that he was required to turn over to prove his attendance at AA meetings and psychiatric evaluations. *Id.* at 27-30. Apparently, at some point in early 2008, a majority of the restrictions imposed on Todd were lifted. However, Todd remained subject to random drug and alcohol screenings which would continue to occur once per month for the duration of his career. *Id.* at 30-31.

party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

In this case, the parties do not dispute the factual issues supporting Todd's claim for compensation. They do however dispute whether Todd's attendance at psychiatric evaluations and AA sessions qualifies as "work" under the FLSA and Kentucky law. Because these are legal determinations that must be decided by the Court, summary judgment is appropriate. *See Dade County v. Alvarez*, 124 F. 3d 1380, 1383 (11th Cir. 1997); *Chao v. Tradesmen Int'l*, 310 F.3d 904, 907 (6th Cir. 2002)("the issue of whether a given set of facts constitutes "work" under the FLSA is a question of law)(citing *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992)).

## III.   ANALYSIS

Todd argues that the FLSA and Kentucky law require LFUCG to compensate him for time spent outside his normal working hours attending AA meetings and psychiatric evaluations. He claims that they were required as a condition of his employment.

Section 207 of the FLSA states that:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA defines the term "employ" to include "to suffer or permit to work" but does not define what "work" is. 29 U.S.C. § 203(g).

The Supreme Court initially interpreted the FLSA in *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, and explained that its provisions were "necessarily indicative of a Congressional intention to guarantee either regular or overtime compensation for all actual work

or employment." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 88 L. Ed. 949, 64 S. Ct 698 (1944). The Court defined "work" to mean "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Muscoda*, 321 U.S. at 598. The Supreme Court has since indicated that even work performed while off duty can qualify as work and may entitle an employee to compensation under the FLSA. *See Steiner v. Mitchell*, 350 U.S. 247, 256, 100 L. Ed. 267, 76 S. Ct. 330 (1944)(holding that employees must be compensated for activities performed either before or after the regular work shift if those activities are an integral and indispensable part of the principal activities for which covered employees are employed); *see Brock v. City of Cincinnati*, 236 F.3d 793, 801 (6th Cir. 2001).

In *Chao v. Tradesmen International, Inc.*, the Sixth Circuit summarized an employer's duties under the FLSA and clarified that "the Portal to Portal Act, which amends the FLSA, modified this judicial construction of hours worked to exclude from compensation activities that are 'preliminary to or postliminary to said principal activity or activities.'" *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002)(citing 29 U.S.C. § 254(a)(2); *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999)).

The state statutes at issue in this case are found in Kentucky Revised Statutes ("KRS") Chapter 337, which is Kentucky's analogue to the FLSA. Specifically, KRS section 337.285 provides that:

> No employer shall employ any of his employees for a work week longer than forty (40) hours, unless such employee receives compensation for his employment in excess of forty (40) hours in a work week at a rate of not less than one and one-half (1-1/2) times the hourly rate at which he is employed.

K.R.S. § 337.285(1). Neither party has presented any Kentucky cases applying this statute to the present issue - whether an employee is entitled to compensation for off-duty attendance at AA meetings or psychiatric evaluations. In the absence of such authority, Kentucky courts have looked to federal cases interpreting the FLSA for guidance. *See, e.g.*, *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89, 95 (Ky. 2006)("In the absence of any Kentucky cases on point, we next look to federal cases interpreting the FLSA."). Accordingly, the Court will apply federal law principals to both the state and federal law claims.

The United States Court of Appeals for the Sixth Circuit has adopted a three step approach to aid courts in determining whether an activity constitutes "work" for purposes of the FLSA.[4] Thus, to determine whether Todd's attendance at AA meetings and psychiatric evaluations constitutes "work" under the FLSA, we must consider whether: (1) LFUCG required these activities; (2) whether they were necessarily and primarily for the benefit of LFUCG; and (3) whether they were an indispensable part of Todd's primary employment activities. *See Brock*, 236 F.3d at 801-04.

**A. Whether Todd's off-duty activities were required by LFUCG?**

LFUCG claims that attending these sessions was not a term or condition of Todd's employment, but was necessary for him to remain fit for duty which is a pre-condition and continuing condition of his employment. In support of its position, LFUCG draws the Court's attention to *Dade County v. Alvarez*, in which the Eleventh Circuit determined that off-duty

---

[4] Both parties in this case agree that the three step inquiry set forth by the Sixth Circuit in *Brock v. City of Cincinnati* governs resolution of whether Todd's activities constitute "work" under the FLSA. All of the arguments addressed to the Court in the parties' motions for summary judgment are made under this three step framework.

physical fitness training by police officers was not compensable "work" under the FLSA. *Dade County v. Alvarez*, 124 F.3d 1380 (11th Cir. 1997). However, the facts of *Alvarez* are distinguishable from this case. In *Alvarez*, the Eleventh Circuit emphasized that while the officers were instructed to do whatever was necessary to maintain their physical fitness levels, they were not directed to undertake any specific off-duty work out routines or training. *Id.* at 1383. They were simply required to remain in good enough shape to perform their job functions and pass a physical fitness exam. *Id.* In remaining physically fit, they had complete discretion in deciding on the method, location and amount of off-duty training necessary.[5] *Id.* In addition, it is significant for purposes of this case that in *Alvarez* there was no suggestion that the police officers' employment would have been adversely affected if they failed to engage in off-duty work outs as long as they maintained an adequate level of physical fitness. *Id.* at 1385.

LFUCG claims that as in *Alvarez*, Todd's condition of continuing employment was not that he attend the AA and psychiatric sessions, but that he remain fit for duty.[6] This assertion is not supported by the evidence in the record. While Todd was permitted to select a psychiatrist and choose which AA meetings to attend, unlike *Alvarez*, he was required to attend a specific number of counseling and AA sessions. Todd was not permitted to exercise any significant

---

[5] In *Alvarez*, at least one officer apparently testified to the effect that officers were not told that they had to run or train off-duty. *Id.* Another officer testified that he trained when he liked for as long as he liked with the thought in the back of his mind that he needed to be in good enough shape to get his job done. *Id.* However, neither officer indicated that there was any sort of compulsion about how long they should train while off duty, what exercises they should perform, and where they should exercise. *Id.*

[6] LFUCG contends that it only adopted the recommendations of Dr. Elliott because it believed that they were necessary for Todd to be fit for duty based on his personal problems with alcohol consumption. (Rec. 16, Def.'s Mem. Supp. Summ. J. 7-8). While the Court does not question the genuine nature of LFUCG's belief that these recommendations were necessary for Todd to be fit for duty, this belief does not in any way change the Court's analysis relating to whether the sessions were required.

discretion in maintaining his sobriety. In addition, he was required to provide documentation to prove his attendance at the AA meetings and psychiatric evaluations. Finally, and most importantly, unlike *Alvarez*, there is clear evidence in the record that Todd's employment would have been adversely affected if he failed to attend any of the required sessions. In fact, Leslie Jarvis of the Division of Human Resources wrote a letter to then Chief of Police Anthany Beatty indicating that Todd's continued employment was contingent on adhering to the recommendations for the remainder of his career.[7]

In this case, it was not enough for Todd to maintain his sobriety and thereby remain fit for duty.[8] Todd's failure to attend any of these sessions would have resulted in some form of disciplinary action and may have resulted in his termination. Consequently, Todd's attendance at the sessions was clearly required by LFUCG.

**B. Whether Todd's attendance at AA meetings and psychiatric evaluations was necessarily and primarily for the benefit of LFUCG?**

LFUCG argues that these sessions were not primarily for its benefit because Todd acknowledges that treatment has improved his life by allowing him to achieve and maintain his sobriety. In addition, LFUCG relies on statements by Police Chief Bastin that LFUCG's goal

---

[7] LFUCG argues that Todd created his own specific circumstances that required different fitness for duty standards for him as opposed to other officers who did not have the same problems with alcohol abuse. (Reply, 3-4). While the Court does not disagree with LFUCG that its actions may have been necessitated by Todd's behavior and problems with alcohol, the fact remains that the conditions imposed on Todd were requirements and not recommendations. If they were merely recommendations, Todd could have varied his attendance at AA meetings and psychiatric sessions based on his perceived sobriety needs and could have determined at some point that these sessions were no longer necessary. However, the evidence submitted to the Court makes apparent that Todd was subject to strict requirements about how many psychiatric evaluations and AA sessions he had to attend, that these requirements were in place for the remainder of his career and that any failure to comply would have resulted in his termination or some other adverse employment action.

[8] During Chief Bastin's deposition, he was asked whether "Keith Todd as of May 2006 in addition to all" his normal duties also was required to attend three AA meetings per week? (Rec. 17, Deposition of Ronnie Bastin, p. 16). He responded that this was correct. (*Id.*).

was to allow Todd to get things straightened up, not only so that he could be a successful employee but also for the sake of his home life. Finally, LFUCG claims that because Todd was able to select his own psychiatrist and the specific AA meetings that best addressed his circumstances, the sessions were primarily for his benefit.

Todd counters that the sessions were primarily for LFUCG's benefit because his attendance was required and ensured his continued employment and contributions to the police department. Todd also draws the Court's attention to the Seventh Circuit's decision in *Sehie v. City of Aurora*, which he argues supports a determination that attendance at the AA meetings and psychiatric evaluations was primarily for LFUCG's benefit.

In *Sehie v. City of Aurora*, a former emergency dispatcher sued her employer under the FLSA claiming that her time spent attending and traveling to and from counseling sessions mandated by her employer was compensable "work" under the FLSA. *Sehie v. Aurora*, 432 F.3d 749, 750 (7th Cir. 2005). These counseling sessions stemmed from a fitness for duty evaluation that was performed after Sehie was involved in an incident at work.[9] *Id.* at 750. Upon completion of the evaluation, it was recommended as a condition of Sehie's continued employment that she attend weekly psychotherapy sessions for six months. *Id.* The Seventh Circuit upheld the district court's finding that the sessions were primarily for the employer's benefit. *Id.* at 752.

However, the facts of *Sehie* are clearly distinguishable from the instant case. First, in

---

[9] Sehie's primary responsibility was fielding 911 calls. *Id.* The incident in question arose at the end of Sehie's shift on December 14, 2000. *Id.* After finishing her shift, Sehie was informed by her supervisors that she would have to work another eight hour shift because a co-workers was sick. *Id.* She protested but was required to stay. *Id.* Less than an hour into this shift, she became very angry and left work. *Id.* Between leaving work and returning the next day, she spoke to her therapist and was prescribed medication for stress. *Id.* When she returned to work she claimed that the absence was a work-related injury. *Id.*

*Sehie*, the Seventh Circuit explained that because the counseling sessions were required and there was a shortage of telecommunications staff, a strong inference arose that the sessions were for the employer's benefit. *Id.* at 752. In this case, no evidence has been presented that LFUCG has a shortage of police officers and that the police department needed to retain Todd's services. As a result, the inference that the counseling sessions were for the employer's benefit which arose in *Sehie*, does not arise in this case.

In *Sehie*, the court also found that the notion that the sessions were for the plaintiff's benefit was undermined by the fact that she was not permitted to see the therapist with whom she had an existing treatment relationship. *Id.* In this case, Todd was permitted to attend sessions with the psychiatrist of his choosing and was able to attend the AA meetings that best met his needs. This supports a finding that the sessions were primarily for Todd's benefit. Furthermore, unlike *Sehie* where the employer's payment of ninety percent of the costs of the counseling sessions was found to support a finding that the sessions were for the employer's benefit. In this case, Todd apparently bore the costs of his various treatments.

The final significant distinction is that in *Sehie*, the counseling sessions were required because of an incident that occurred at work. In this case, the incident giving rise to Todd's fitness for duty evaluation occurred while he was off-duty and at home. Furthermore, the purpose of the counseling sessions in *Sehie* was to enable the plaintiff to "perform her job duties and relate to co-workers more effectively and at a higher skill level by addressing...personality deficiencies and problems that predated" her incident at work. *Id.* at 752. The sessions sought to enable Sehie to manage her emotional problems which had become an issue at work, properly respond to 911 calls and remain on the job in a position that was short staffed. *Id.* None of these

facts are present in the instant case. There is no indication that there had been any problem with Todd's on-duty performance. Furthermore, the counseling sessions were not designed to improve his on-duty performance, but to keep him at its existing level in the face of the reasonable threat that his substance abuse problems might make him unfit for duty and endanger himself or the public. As discussed above, there is also no indication that LFUCG received any significant benefit from keeping Todd on-duty. Even accepting that Todd was an excellent police officer, there is no indication that his position was short-staffed so that a course of treatment that allowed for his retention was primarily for LFUCG's benefit.

As a result, the Court declines to apply *Sehie's* holding to these facts. Moreover, this court heeds the 7th Circuit's caution that "by no means does our ruling suggest that every time an employer gets help for its employees, the employee must be compensated for hours worked." *Id.* at 752. Instead, the Court finds that the AA meetings and psychiatric evaluations were not necessarily and primarily for the benefit of LFUCG. The record certainly supports that Todd was a valued and capable police officer.[10] However, there is no evidence that his retention was in any way crucial to the operations of the police department. Instead, it appears that the primary beneficiary of the psychiatric evaluations and AA sessions was Todd. He has acknowledged that sobriety has improved his life and familial relations. Sobriety has also allowed Todd to retain his employment with the police department, which was apparently threatened by his substance abuse problems. The Court cannot find that while in treatment, Todd learned any skills that enabled

---

[10] Chief Bastin acknowledged that part of the police department's purpose in requiring attendance at the AA meetings and counseling sessions was to allow Todd to continue being a successful employee and contributing to the department's success. (Rec. 17, Deposition of Ronnie Bastin, p. 16).

him to become a more effective or valuable police officer. The skills that Todd learned enabled him to keep his job and ensured that his conduct did not threaten his ability to protect his own safety, the safety of fellow officers and the safety of the public. While in other contexts, the rigid restrictions put in place by the LFUCG might lead to a different conclusion, given the safety sensitive nature of Todd's employment as a police officer, these restrictions do not appear to be unjustified and have enured primarily to his benefit, not to the benefit of LFUCG.

### C. Whether Todd's treatment was an indispensable part of the primary activities of Todd's Employment as a Police Officer?

The Court also finds that Todd's treatment was not an indispensable part of the primary activities of his employment as a police officer. As LFUCG indicates, the primary activities of police officers include activities such as patrol assignments, apprehending criminals, performing investigations and responding to the various happenings of daily life affecting the public safety. Sobriety is not a primary activity of a police officer's employment despite the fact that an officer's lack of sobriety may have a detrimental effect on his ability to perform the requirements of his job adequately. Todd clearly was required to expend significant energy to achieve his sobriety so that he could continue to be an effective police officer. However, he performed no police work while at AA meetings or psychiatric evaluations. This is the case despite the fact that these sessions were required as a condition of his continuing employment. Consequently, these sessions themselves are not a primary and indispensable part of the duties of a police officer.

For the reasons discussed in this opinion, it is the Court's determination that Todd's attendance at numerous AA meetings and psychiatric evaluations since March 1, 2006, which

were mandated by his employer, does not constitute compensable "work" under the FLSA.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** that:

(1) Defendant LFUCG's Motion for Summary Judgment (Rec. 16) is **GRANTED**; and

(2) Plaintiff Keith Todd's Motion for Partial Summary Judgment (Rec. 19) is **DENIED.**

Dated this 10th day of December, 2009.

Signed By:

*Karen K. Caldwell* KKC

United States District Judge